12-2340 Court, Ms. Ross appeals from a $163 million judgment that was entered after a trial where the live witness testimony lasted all of 20 minutes. The judgment in this case is infected by improper shortcuts. In fact, it was a rush to judgment. So in my remarks today, I'd like to highlight two issues and a third, if I have time. Of course, I'm available to address any issues in the matter. The overarching question, as I understand it, Ms. Ross wasn't there for the trial. That's correct. And so there are a lot of things that are said in the record here to mitigate, but they're made by the lawyer, and there's no evidence to back it up. Is that a fair assessment? Of course, I can only address specific issues. But in general, where you see the factual part of our appeal, where we're appealing on the basis of clear error of factual findings, we're holding the Federal Trade Commission to their burden of proof. And so what we're showing is that if you take all of the dots that they put in the record and try to connect them, they just don't add up to the findings. And furthermore, on that side of the appeal, which actually I don't care to get into in my prepared remarks, I'll address questions, but on the clear error aspect of the appeal, we have the benefit of the United States to be woodened from this court, I think 2012, perhaps 2011. And that's a case which says that, or really it emphasizes the rule that's always applied, which is clear error must be ascertained on the basis of the entire record, not just the snippets that were chosen to end up in the final findings and conclusions. So what we try to do is inject or re-inject the aspects of the factual record which were in the structure of that part of our appeal. Well, but if there's evidence in the record that supports a district court's ruling and cuts against, not ruling, but finding, because we're talking about facts here, cuts against such a finding, how can there be clear error in a bench trial? Help me out with that. Judge Davis, only if you assume it's equiposed. If you assume that... No, I'm not assuming equiposed. I mean, if it's equiposed, defendant wins. Let me give you... Properly applied, burden of proof in a civil case means that if the evidence is in equiposed, the defendant wins, right? If that's exactly my comment, I apologize if I was unclear. Okay. So our appeal is actually based on the fact, and I'll give you a specific instance, that there were findings that she controlled the company, but that finding was in a vacuum of any consideration of the evidence that there were two other gentlemen who were owner, or one gentleman who was an owner of the company, another gentleman who was the CEO of the company, and there was no particular evidence anywhere in the record that she had any control over anything. But you don't deny joint control? In fact... As a legal concept, do you? In the abstract, I'm sure that that exists, but... Well, I'm not sure I know what you mean by in the abstract. Your Honor, it's just not our case. There is no evidence of such joint control for... When you say no evidence, again, I don't mean to pick on your words, but there are facts in the record from which a fact finder can draw certain inferences, right? I mean, you don't have to answer that one, but there's evidence here. And not all of it speaks for itself, that it's a process of inference drawing, right? And so, that's what district judges do in a bench trial. But, Your Honor, our problem with what happened below is that the inferences should only be drawn once all the evidence is considered and weighed. One has to consider all the evidence. That's what we know from the Supreme Court's Anderson decision, and that's what we know from this court's Wooden decision. It makes it... It opens the door to clear error when... But where's the indication that the district court here didn't consider all the evidence? In other words, clearly, you're not arguing because we lost, then the judge must not have considered the evidence that supports us. You're not making that argument. May I give you one example, Your Honor? Sure. There's a chat that was logged that's in the record where Ms. Ross is explaining to her co-employee, they're just talking over the chat, and she says, I don't think what we do is illegal, I think we have great products, I think that this company has a terrific future. That document is in evidence and certainly suggests or helps a court or helps a party to infer that there was good faith and that there was lack of knowledge of any fraud going on. However, that was a document that was not considered in the findings and conclusions of the district court. I guess I'm just not clear, and I don't want to detour you from your formal presentation, but why do you say the court didn't consider it? It's in the record. It's before the court. It didn't appear in the findings, Your Honor. That's the basis for us saying that. I see. I see. So it's sort of a structural problem you have here. And we see in the wooden... Because the judge didn't mention it, then you're drawing the inference that the judge somehow overlooked it. And that's the inference we should draw from this court's wooden decision, that if we see that there was information in the record that didn't appear to be considered by the court in its findings, then that opens the door to a clear error analysis. What about all the things from the Canadian investigation that Ms. Ross either identified with or said they were hers, et cetera, et cetera? She adopted the financial statements that one of the other people had put in the record, and she adopted it as her own, among other things? To be clear, she adopted the body of the declarations and not the exhibits, but only within the knowledge, naturally. But the direct answer to your question, Judge Hamilton, is that that is evidence in the record, largely. There are some items that perhaps didn't make it in, and there are some aspects that we challenged on evidentiary grounds. But much of it, you're right, Your Honor, we did not challenge it coming in for that reason. What about the testimony of the FTC investigator, Cheryl Drexler? Did you challenge that? In fact, we rely on that, because that testimony shows that Ms. Ross's responsibilities with the company for placing ads was limited to six defined programs. That's not what she testified to. She testified to the fact that Ms. Ross was one of the individuals responsible for the scheme. Well, that's a conclusion, Your Honor, as an inference that Ms. Drexler might have drawn. That's a finding by the investigator. I guess based on the information she had, she would be entitled to draw a conclusion, which she not. Well, the key part of the investigator's affidavit that's important and that's very factual, it's not just an inference or an opinion, is the part where she lists all the products of the company, and there are a hundred or so, and only six of those products are identified with Christy Ross, my client. So therefore, when we get to the future aspect of the case, where we're trying to figure out what allegedly deceptive ads was she participating in, that's the universe. It's those six products. What was your vice president of the company doing for some of this time? She called herself a vice president of, I think, business development. But Your Honor, you know, if you go down the street to the Chase Bank... So you're saying that she called herself a vice president, but she really wasn't a vice president. Is that what you're trying to tell me? She didn't call herself a C-level officer. And in fact, if you go down the street to the Chase Bank, you walk in the door, you sit at any desk, the person whose desk you sit at is the vice president of the bank. But if I may return to the prepared remarks, I can move this forward. The primary issue I would like to present, Your Honors, is that this court should determine the correct scope of Section 13B of the Federal Trade Commission Act and hold that it does not include monetary remedies. So for this part of my remarks, let's all assume that there are violations of the act. So let's all assume that the findings and conclusions will stand such as they are. Let's argue that an injunction was proper. That means that if there are bad guys here, the bad guys stop doing what they're doing. The consumers are no longer being harmed. Both sides agree that the Supreme Court's Porter decision is a starting point for analyzing whether monetary remedies even exist under Section 13B of the Federal Trade Commission Act. And the wording of Porter is that a district court has the full range of equitable remedies unless, quote-unquote, in so many words or by necessary implication, the language of the statute narrows or limits the scope of the remedy. What are you relying on under your interpretation of 13B? For our interpretation of 13B, as far as case law, I'm relying on the United States v. Philip Morris decision from the D.C. Circuit, which isn't exactly the same language as Section 13B. Are you claiming that Section 19 in some way or other altered Section 13B? Not at all. In fact, that's belt and suspenders. We don't even have to reach the question of what the enactment of Section 19B did in order to directly apply Porter. Let's even put that out of our minds for just a brief moment, that Section 19 exists. Because what we have in Section 13B, enacted in 1973, is a heading that says temporary restraining orders, preliminary injunctions. Nothing about monetary remedies. Beneath in the text, there's nothing about monetary remedies. You finally get to the place where it says, in proper cases, the commission may seek and after proper proof, the court may issue a permanent injunction. You can search those words all you want, Your Honors, but there's no indication that there's any monetary remedies written into those words. Now I get to pull in the analysis that we have the benefit of from United States v. Philip Morris, the D.C. Circuit. In that case, it was the RICO Act that was under analysis, but it was very similar language in the sense that it was language calling out an injunction. And the question at bar in front of the D.C. Circuit is applying Porter and then applying two future Supreme Court cases, Mitchell and Megrig, was there any way to impute monetary remedies as one of the available remedies in that context? And the D.C. Circuit held no, because the language was future looking. It was future looking language when it calls out an injunction. And so, quote unquote, in so many words, the injunction language was restricted to just that type. In our reply brief at page 6, footnote 2, we have a catalog which almost goes without saying a catalog of cases that support the vocabulary notion that as a matter of vocabulary and legal concepts, restitution, disgorgement, rescission are not embodied within the concept of a permanent injunction. Instead, all four of those concepts are part of a larger genus or larger category of equitable remedies. So you think it would be a plausible reading of a federal statute that authorizes a federal district court to issue a, quote unquote, permanent injunction to mean that the court could not issue a preliminary injunction? Would that be a plausible reading of that language? I think that reading is made all the time. In fact, there's... You think a federal district court authorized to issue a permanent injunction under such a statute could not issue a preliminary injunction? No, Your Honor. The opposite, I'm saying. In the case of 13B, it actually calls out as temporary restraining orders, preliminary injunctions and permanent injunctions are enabled. So what happens in the real world in these cases is that based on the assumed FTC power of being able to get monetary remedies, at the outset of a case, they immediately seek, this is across the board, across the country, they immediately seek and get an asset freeze under the powers of a preliminary injunction because they claim the power to get those assets at the end of the case anyway with their assumed permanent injunction powers. So the asset freeze, of course, creates a very complex situation for the defendants in those cases where they're dissuaded from defending on the merits and we go into that a little bit and the literature goes into that about the dynamics of an FTC action and how it's systematically biased against courts actually even hearing defenses because the powers assumed by the FTC are so great to compel settlements. Well, as to your argument about Philip Morris, doesn't the Mitchell case disagree with that the Supreme Court allowed and permitted recovery of lost wages in that case? Well, the language was not the identical language of a permanent injunction in the Mitchell case. What you also saw in the Mitchell case is that it was following the general theme of Porter which had other order language in the statutory language, quote, unquote, and courts are allowed to issue, quote, unquote, other orders and it was following on that and I believe the Mitchell decision also was in the shadow of the legislative history and the purpose of that statute which was to get back pay to employees who are creating a grievance in order to encourage employees to have the ability to use that channel to grieve and not be retaliated against. So the D.C. Circuit distinguished Mitchell because Mitchell was about getting back pay to aggrieved employees to make sure that there is a channel open for them to make their complaints without retaliation. Your Honor, I see that my time is about to run out for this segment and I'd like to save the rest for rebuttal unless there are further questions. Thank you very much. Mr. Metzler, we'll be glad to hear from you, sir. Thank you. May it please the Court, my name is Jack Metzler, I represent the Federal Trade Commission. Ms. Ross' arguments regarding Section 13B of the Federal Trade Commission Act have not been adopted by any court and this court should not part from the six circuits that have held that Section 13B authorizes as an equitable adjunct to an injunction monetary relief. The discussion in the prior segment, Ms. Ross' counsel has really mistaken how Porter and Mitchell work. In Porter, the court said that when Congress authorizes an injunction, it invokes the full by the language of the statute or an inescapable inference. It's limited and the courts have interpreted that to mean that you need something in the statute that limits the equitable powers. In the Mitchell case, contrary to my friend's representation, the court was not relying on the other order language that was discussed in Porter. In fact, it's just the opposite. In Mitchell, they didn't have the other order language and so the court went out of its way to point out that the reasoning of Porter did not depend on the statutory language of there being an other order language. With regard to the D.C. Circuit's decision, in that case, there was an expressed statutory limitation. There was a list of orders that the court was permitted to enter to stop and restrain future violations of RICO and the court looked at that list. They involved things like divesting the company, reorganizing. They were all forward-looking and none were backward-looking and came to the conclusion that that list limited the jurisdiction to enter an injunction. The same is not true here. Here, as counsel points out, the language merely says, in an appropriate case, the commission  is attempting to find a clear statutory limit from silence and no court has ever found that. It's not just the Federal Trade Commission Act, Your Honor. This same reasoning has been applied to the Securities and Exchange Act. It's been applied to the Commodities Exchange Act, the Motor Carrier Act, the Federal Employment Liability Act, I believe, in Mitchell and others. So if this court were to part ways with the other circuits on the Federal Trade Commission Act, it would also be parting ways with the reasoning of courts and the Supreme Court on a host of others. Let's talk about the legal standard for finding individual liability predicated on corporate violations. The appellee has some argument about that, but they don't really tell, I can't discern what standard they want. What do you think about what the standard ought to be? Well, the standard that has been adopted by most of the courts is that an individual can be held liable for the violations of a corporation for injunctive relief if they have participated directly in the challenged conduct or if they have control over that conduct. And the courts have interpreted that to mean not just direct control over the people who are doing things like the deceptive ads that were placed in this case, but also general corporate control on the principle that a corporate officer can't wall himself off from the conduct and then later say, well, I didn't participate in it. In order to be held liable for monetary relief, joint and severally with the company, the courts have held there also needs to be some knowledge. So again, turning back to the corporate officer, somebody who has, who is in control of the company and is not involved in the challenged conduct, you need to show that they at least knew or should have known about the conduct before they can be held monetarily responsible. Now, none of that really applies here because all those distinctions that the courts have made were about people who were not directly participating in the fraud. And here, Ms. Ross was involved from soup to nuts. She was not only helping to create the ads, she was helping to edit them, she was making them more deceptive. She ordered her subordinates to remove the word advertisement. Some indication that what they were seeing on their screen wasn't a true representation of the viruses that were, that there were viruses on their computer. She also approved the content of the ads, and you can see this in uncontroverted evidence in the record, the chat logs, people, her subordinates give her a URL and say, here's the ad, here's a list of them. She looks at them and says, well, those are fine. So she is approving the content of the ads. She's helping to create the ads. She opens the account with the ad network, so she's enabling them to be put in front of the public. She actually places the ads. So she sends the ads to the ad network in order that they can go into, in front of user screens, and she pays for that with her own money in many cases. So her participation, there's really no question and certainly nothing even approaching clear error, just based on the uncontroverted evidence in the record. Her knowledge, likewise, can be shown from the same facts. She's not only looking at the ads, she's discussing, for example, the scanner ad is one where users would have a pop-up that says, you know, warning, your computer is infected with viruses, and then behind that there's a movie playing that looks like a program running, scanning for errors and files are appearing and buttons are blinking and so forth, and it counts up to 948 errors or whatever the number is. And she's discussing that with the developer, and they talk about how many errors are there going to be? What should the button look like? How do we, what do we do at the end of the scan so that the user knows that the fake false scan that didn't find any real errors but is telling the consumer that it did, how do we tell them that that's over and now they need to click on something to order our product? So her knowledge, again, from uncontroverted evidence is quite clear. You can also see it in her handling of the ad account with... So your argument, basically, is that we don't need to identify the boundary between individual liability and the absence of individual liability in this case? Well, I suppose the court should probably identify the standard, and I would submit that the court should adopt the same standard that has been adopted by others. But your argument is that she had direct participation. Correct. Your argument is that this is an easy case. Well, it is an easy case. We don't have to go to the boundary. That's true. You could stop there and say so long as there is direct participation, as there was here, monetary liability is appropriate. If the court has any further questions on clear error or the, actually, I'd like to address one more thing before I sit down. And that is the initial liability of the company was established in this case by the district court in the June 12th order, in which the court said there was no question of material fact regarding the company's violations of the act. And accordingly, the only issues remaining for trial were the extent of Ms. Ross' participation and control. To the extent that Ms. Ross raises in her reply brief some problem with the June 12th order, under the decisions of this court, she waived that by not ever arguing that there was any problem with the order in her opening brief. And accordingly, she can't raise that issue on reply. If there are no further questions, we'll rest on our briefs. What's the, anything happening in the criminal side? So far as I know, we still do not know where she is. And so far as I know, there's no activity from the Department of Justice. You try to stay away from that, right?  Absolutely, Your Honor. Knowledge of DOJ's activities in your overlapping matters. Typically, when they get to me, it's either happened or it hasn't, and I don't have the opportunity to know. Thank you. Mr. Greenspoon, while you're coming up, Ms. Ross would have us hold that the district court lacks jurisdiction to grant equitable monetary relief under Section 13B. Yes, sir. I have searched the record and cannot find any case circuit or district court so holding. That's right, Your Honor. This would be a matter of first impression, and we communicated to the court that it would be for the circuit. And for the benefit of Your Honors, A3534 is the chat where Ms. Ross explains to her colleague, I don't think we're doing anything illegal. That's a chat that was never incorporated or weighed by the district court, it seems from the record, in making the findings of knowledge of fraud within the company. You might not want to answer this question. I could understand why you wouldn't, but do you have knowledge as to where Ms. Ross is at this time? I do not know where she is. I communicate with her criminal defense counsel. Your client has run off and left you. I hope not. Does the fugitive disenfranchisement doctrine apply in this case? I don't know what that doctrine is. There's a series of cases in which a party who sort of absconds is not entitled to appellate review. I mean, that hasn't been raised here. No, of course. And in fact, in the record, you'll see that there was an attempt to seek a negative inference from her invocation of Fifth Amendment rights, and we think the district court was correct to deny that request. So we stand here without any kind of negative inference because there's good cause for there not to be. Why couldn't the district court infer, draw an adverse inference in a civil case? Well, I think the district court could have within its discretion, but, and the FTC did not appeal this. There's no argument for an alternative ground for affirmance. Okay. So you don't suggest that the district court would have been wrong to draw an adverse inference, or legally incorrect. Hypothetically, it could have done either within its discretion if the record supported it. That's right. And very quickly, on individual liability standards, again, a matter of first impression in this circuit, we have to go to the sources of legislative intent. And the best source of legislative intent is, no surprise here, the language of the statute. 15 U.S.C. section 52 talks about false advertising, and it shall be unlawful for any person, and cause to be disseminated any false advertising. So absolutely, to the extent that a person, an individual, is disseminating false advertising, that's within the scope of section 52, and by our arguments, within the scope of a court action for an injunction even. Now, it gets problematic because we have layered on top of that $163 million of equitable monetary remedies. Where in section 15 U.S.C. section 52 do you see authority for that? That's absolutely nowhere. It's been sort of a phantom of, if you call it federal statutory common law, you trace back to the origin of imputing monetary remedies against an individual, and you see no real legal analysis that engendered that. So the legal standards that have emerged, my colleague is correct, is that in addition to the factors that could lead to an injunction in order to impute monetary remedies, the courts apply a known or should have known standard. That's the scienter or the knowledge standard under individual liability for monetary remedies. That is an incredible grab of authority by the Federal Trade Commission to say that somebody who is negligent within a company, because somebody down the hall might have done some bad things, and this person didn't stop the person, perhaps, you know, violating a duty of care to the company could be held liable. That's a remarkable assertion, and it finds no basis in the statute and the case law that engendered individual liability doesn't give us any real rationale for why a known or should have known standard should apply. What standard do you want us to apply? That there's knowledge that the conduct is fraudulent. I'm a little bit at a disadvantage. I think there's no monetary remedy allowed, of course, in the FTC Act, but if there is monetary remedies and it does trickle down to individuals, it's in our briefing. We explain that it should be a knowledge of the fraudulent conduct standard for monetary remedies. And if I might just close with one overarching theme, the FTC is not powerless to get injunctions under our argument of the case. The FTC is not even powerless to get monetary remedies. There's an entire statute under which the FTC has the power to adjudicate within itself toward a cease and desist order and then to lodge the cease and desist order with the court and get consumer redress and a whole swath of monetary remedies. That's Section 19 of the Federal Trade Commission Act. But it costs them something to do that. There's a statute of limitations that cuts off at three years before the filing. That would certainly have been implicated in this case, because the calculations go back to 2004. And there's a prohibition on exemplary damages in Section 19. I see my time is up, and unless there are further questions, we ask for reversal or vacating the judgment. Thank you very much, Mr. Greenspoon. We appreciate your presentations, as we do all counsel. We'll ask the clerk to adjourn court, come down to Greek Council, and stand in recess, signing doc. This honorable court stands adjourned, sign or die. God save the United States and this honorable court.
judges: Andre M. Davis, Henry F. Floyd, Clyde H. Hamilton